# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

May 2, 2025

Lyle W. Cayce
Clerk

No. 24-30530

LEVON ADGER, SR.,

*Plaintiff—Appellant*,

*versus*

TA OPERATING, L.L.C., *doing business as* TRAVEL CENTERS OF AMERICA,

*Defendant—Appellee*.

Appeal from the United States District Court
for the Western District of Louisiana
USDC No. 5:23-CV-179

Before STEWART, CLEMENT, and WILLETT, *Circuit Judges*.
PER CURIAM:[*]

This is an alleged slip-and-fall case. Levon Adger collapsed while inspecting his car, which was being serviced at TA Operating LLC in Shreveport, Louisiana. Adger appeals the district court's grant of summary judgment to TA—for failure to prove TA's conduct as the cause-in-fact of

---

[*] This opinion is not designated for publication. *See* 5TH CIR. R. 47.5.

No. 24-30530

Adger's injury—and its denial of his motion for reconsideration. We AFFIRM on both fronts.

## I

## A

On November 18, 2022, TA's service technician, Terrance Abrone, arrived to work and observed that oil "was all over" the service pit, where he services trucks. He probably completed some "grease jobs" and "oil changes" in the morning, and walked up and down the stairs to enter and exit the pit about a "dozen times" while servicing trucks.

After Abrone serviced five or six big rig trucks, Adger arrived with his semi-truck. Once Abrone finished servicing Adger's truck, he told Adger that the semi-truck was leaking. Wanting to see the supposed leak, Adger followed Abrone into the service pit. Shortly after descending the stairs into the service pit, Adger collapsed to the ground "near the area where you have to duck" under a cover to access the area underneath the truck. Adger does not know how or why he fell, nor does he remember going to the ground.

Abrone was ahead of Adger and had his back turned to Adger at the time of the collapse. He did not see or hear Adger collapse. When he turned around, Adger was on the ground.

Photographs taken immediately after Adger's fall show "black gunk," identified as oil by Abrone and another TA employee, in the service pit. Other than oil, a material referred to as "kitty litter" is also visible in the photographs. TA uses this material to "absorb the oil up from the ground."

No. 24-30530

B

Adger sued TA in Louisiana state court, alleging that TA's negligence was the proximate cause of his fall. He initially alleged he fell down the stairs into the pit. TA removed the case to federal court.

About one year later, on January 11, 2024, TA timely moved for summary judgment. Abrone had not yet been deposed, and the district court ordered him to appear. As a result, Abrone gave his deposition two weeks after TA's motion for summary judgment and eight days before Adger's deadline to file his opposition. Based on Abrone's testimony, Adger requested leave to amend his complaint—replacing his allegation that he fell down the stairs with an allegation that he slipped and fell on the floor of the service pit.

Soon after, on February 2, Adger filed his opposition to TA's summary-judgment motion. He submitted Abrone's sworn deposition and affidavit as evidence in support of the opposition, along with the report and affidavit of his medical expert, Dr. Kaufman. TA filed its reply one week later.

Notably, Adger did not submit updated expert opinions or deposition testimony for his liability expert, Dr. Henry, or deposition testimony for Adger's medical examiner, Dr. Kaufman, with his opposition. Those depositions took place on February 21 and March 8, respectively, and Dr. Henry's updated expert opinion was dated February 19.

Meanwhile, summary judgment was still pending. The district court granted Adger's motion to amend the complaint on February 29. And on April 24—nearly two months later—the district court granted TA's motion for summary judgment because Adger "fail[ed] to meet his burden of proof" as his "causation allegations [were] based on mere speculations."

No. 24-30530

Adger moved for reconsideration on May 22, arguing that the district court "disregarded circumstantial causation evidence" and Adger had been deprived the opportunity to submit Dr. Henry's and Dr. Kaufman's additional reports or deposition testimony. The district court denied this motion, emphasizing that: (1) the court "closely considered" the memoranda of the parties and the evidence attached to them before granting summary judgment, and (2) Adger could have sought leave to file the supplemental expert materials, as they were prepared nearly two months before the court issued its ruling, but did not. Adger timely appealed.

## II

The district court had diversity jurisdiction under 28 U.S.C. § 1332. We have jurisdiction over this appeal under 28 U.S.C. § 1291, as Adger appeals the district court's final judgment against him.

## III

We review summary judgment *de novo* and apply the same standard as the district court. *See Rogers v. Bromac Title Servs., L.L.C.*, 755 F.3d 347, 350 (5th Cir. 2014). Summary judgment is warranted if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). "We may affirm a summary judgment on any ground supported by the record, even if it is different from that relied on by the district court." *Sheet Pile, L.L.C. v. Plymouth Tube Co., USA*, 98 F.4th 161, 165 (5th Cir. 2024) (quotation marks omitted).

"When jurisdiction is based on diversity," we "must apply the substantive law of the forum state, here Louisiana." *Cent. Crude, Inc. v. Liberty Mut. Ins. Co.*, 51 F.4th 648, 652–53 n.4 (5th Cir. 2022) (citing *Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938)); *see also Holladay v. Lowe's Home Ctrs., L.L.C.*, No. 23-30769, 2024 WL 3688533, at *2 (5th Cir. Aug. 7, 2024) (per curiam). In this case, that is Louisiana tort law and Louisiana's

4

No. 24-30530

Merchant Liability Act. La. Rev. Stat. § 9:2800.6; *see Sullivan v. Brookshire Grocery Co.*, 348 So. 3d 872, 876 (La. App. 2 Cir. 2022).

A

Louisiana "places a heavy burden of proof on plaintiffs in slip and fall cases." *Bagley v. Albertsons, Inc.*, 492 F.3d 328, 330 (5th Cir. 2007) (quotation marks omitted). The Merchant Liability Act mandates that the plaintiff—here, Adger—prove all elements of his slip-and-fall case:

> In a negligence claim brought against a merchant by a person lawfully on the merchant's premises for damages as a result of an injury, death, or loss sustained because of a fall due to a condition existing in or on a merchant's premises, *the claimant shall have the burden of proving*, in addition to *all other elements* of his cause of action, *all* of the following:
>
> (1) The condition presented an unreasonable risk of harm to the claimant and that risk of harm was reasonably foreseeable.
>
> (2) The merchant either created or had actual or constructive notice of the condition which caused the damage, prior to the occurrence.
>
> (3) The merchant failed to exercise reasonable care. In determining reasonable care, the absence of a written or verbal uniform cleanup or safety procedure is insufficient, alone, to prove failure to exercise reasonable care.

La. Rev. Stat. § 9:2800.6 (emphases added). In addition to the Merchant Liability Act, Adger must also prove the five traditional elements of negligence: (1) the defendant had a duty to conform his conduct to a specific standard; (2) the defendant failed to conform his conduct to the appropriate standard; (3) the defendant's conduct was a cause-in-fact of the plaintiff's injuries; (4) the defendant's conduct was a legal cause of the plaintiff's injuries; and (5) actual damages. *See Perkins v. Entergy Corp.*, 782 So. 2d 606, 611 (La. 2001); *Berg v. Zummo*, 786 So. 2d 708, 715–16 (La. 2001).

"'Mere speculation or suggestion' is not sufficient to meet [these] burden[s]." *Bagley*, 492 F.3d at 330. "[A] party cannot defeat summary judgment with conclusory allegations, unsubstantiated assertions, or 'only a scintilla of evidence.'" *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007); *see also Ruiz v. Whirlpool, Inc.*, 12 F.3d 510, 513 (5th Cir. 1994) (noting "[t]estimony based on conjecture or speculation is insufficient to raise an issue of fact to defeat a summary judgment motion"); *Freedom From Religion Found., Inc. v. Mack*, 49 F.4th 941, 961 (5th Cir. 2022).

## B

We begin where the district court left off: Adger's burden to demonstrate that TA's conduct was the cause-in-fact of Adger's injury. "Cause in fact is generally a 'but for' inquiry; if the plaintiff probably would have not sustained the injuries but for the defendant's substandard conduct, such conduct is a cause in fact." *Roberts v. Benoit*, 605 So. 2d 1032, 1042 (La. 1991).

As TA emphasizes, Adger cited three pieces of evidence in his opposition—none of which are availing.

First, Abrone generally testified that oil existed within the service pit. That the pit had oil in it is insufficient to impose liability; Adger must create a genuine dispute as to whether the oil *caused* his fall. *See Castille v. Great Atl. & Pac. Tea Co.*, 591 So. 2d 1299, 1303 (La. Ct. App. 1991).

Second, Adger pointed to photographs of the "oily" service pit. But that only shows the presence of oil or oil stains, like Abrone's testimony. It does not suffice to link the presence of oil to Adger's collapse. And the district court correctly avoided circular reasoning—that Adger's fall evidenced the floor was slippery with oil and thus unreasonably dangerous. *See Kinchen v. J.C. Penney Co.*, 426 So. 2d 681, 684 (La. Ct. App. 1982), *writ denied*, 431 So. 2d 774 (La. 1983).

6

And third, similar to Abrone's testimony and the photographs, testimony that TA employees are required to wear slip-resistant shoes is not evidence of causation—just a safety precaution for the potential presence of oil.

None of this evidence raises a genuine dispute of material fact to suggest the oil was the cause-in-fact of Adger's fall.

C

Adger suggests the district court made two errors. In his view, the district court failed to consider additional circumstantial evidence attached to his opposition—in particular, Abrone's deposition testimony—and supposedly required him to provide *direct* evidence of causation, when circumstantial causation evidence can be sufficient. But neither is true.

The district court's ruling indicates that it considered *all* the evidence attached to the opposition—more than just the three items Adger cited in the causation section of his memorandum—which included circumstantial evidence. Indeed, the district court clearly stated it found Adger's "causation allegations are based on mere speculations" "[a]fter reviewing all the evidence." But the district court found that evidence—regardless of whether it was circumstantial—was unreliable and speculative. We agree.

First take Adger's primary contention—that the district court ignored Abrone's testimony that the oil caused Adger's fall. But any reliance on such testimony would be misplaced. Sure, Abrone was in the service pit at the time Adger collapsed. But Adger overplays his hand when he says that "TA's employee, Abrone, witnessed Adger's slip and fall." To the contrary, Abrone repeatedly stated his back was turned and he did *not* see or hear Adger collapse. Accordingly, his speculative testimony is not based on personal knowledge and is thus unreliable. *See* LA. CODE CIV. PROC. art. 967 (noting "[s]upporting and opposing affidavits shall be made on personal

7

knowledge . . ."); *Broussard v. Retail Inv'rs of Tex., Ltd.*, 123 So. 3d 912, 916 (La. App. 3 Cir. 2013) (rejecting causation testimony of witness who did not witness fall); *Steib v. Lamorak Ins. Co.*, 365 So. 3d 745, 758 (La. App. 4 Cir.) (contradictory deposition testimony "is insufficient to create a triable issue of fact"), *writ denied*, 317 So. 3d 326 (La. 2021).

Second, and perhaps most importantly, Adger explicitly stated he did not know what caused his collapse. Louisiana and Fifth Circuit precedent agree: Mere speculation as to what caused an accident does "not raise[] a genuine issue of material fact to defeat summary judgment." *Holladay*, 2024 WL 3688533, at *4; *see, e.g.*, *Bailey v. Fred's Stores of Tenn. Inc.*, 243 F. App'x 850, 852 (5th Cir. 2007) (per curiam) ("Indeed, as even [the plaintiff] concedes, the cause of her fall is unknown. Any suggestion otherwise would be mere speculation."); *Tomaso v. Home Depot, U.S.A., Inc.*, 174 So. 3d 679, 683 (La. App. 1 Cir. 2015) ("[S]peculation as to what caused an accident cannot supply the factual support necessary to show that a plaintiff would be able to meet his evidentiary burden of proof at trial."); *Mooty v. Ctr. at Westbank LLC*, 63 So. 3d 1062, 1067–68 (La. App. 5 Cir. 2011) ("[The plaintiff] clearly stated that she did not know what caused her to fall . . . Thus, [her] testimony [fails to] create[ ] a genuine issue of material fact . . . ."); *Reed v. Home Depot USA, Inc.*, 843 So. 2d 588, 591 (La. App. 2 Cir. 2003); *Odom v. Colonel Sanders Ky. Fried Chicken*, 636 So. 2d 1027, 1029 (La. App. 1 Cir. 1994); *Ruello v. JPMorgan Chase Bank, N.A.*, No. 20-895, 2021 WL 5998576, at *3 (E.D. La. Dec. 20, 2021).

Indeed, many plaintiffs in slip-and-fall cases provide some circumstantial evidence of what *might* have caused their falls—just as Adger does in this case. *See, e.g.*, *Holladay*, 2024 WL 3688533, at *1 (cable); *Ruello*, 2021 WL 5998576, at *2 (sprinkler); *Tomaso*, 174 So. 3d at 683 (zip tie); *Broussard*, 123 So. 3d at 916 (work cart and store policy). But contrary to

No. 24-30530

Adger's argument, the issue wasn't that those plaintiffs—and Adger—relied on circumstantial evidence alone. Instead, the issue preventing their success was that the alleged cause (or, in this case, alleged *causes*) was speculative. While circumstantial evidence may prove sufficient to avoid summary judgment in some cases, speculation does not. *See Holladay*, 2024 WL 3688533, at *3.

Accordingly, Adger's reliance on *Tomlinson v. Landmark American Insurance Co.*, 192 So. 3d 153 (La. App. 4 Cir. 2016), is misplaced. In *Tomlinson*, a witness—but not an eyewitness—went to help the plaintiff who fell and commented that "the portion of the wooden floor where [the plaintiff] fell was very slippery." *Id.* at 157. But that wasn't the only circumstantial evidence in the plaintiff's favor; the plaintiff herself testified "that she fell when she stepped off the commercial rug and onto the wood floor, noticing that the condition of the floor was very slippery." *Id.* at 165. And the record reflected as much; the plaintiff *told her treating physicians* that the "floor was slick" which "caus[ed] her to fall when she stepped off the commercial rug." *Id.* at 162. Furthermore, the plaintiff's expert opined solely that the plaintiff's "fall was the result of [the restaurant's] failure to properly and routinely clean and degrease the floors." *Id.* at 165.

Unlike the plaintiff in *Tomlinson*, Adger did not know what caused his fall. And in his initial report, Dr. Kaufman, Adger's treating physician, did not note any comments by Adger about slipping.[1]

---

[1] Even if we were to consider Adger's late-submitted materials, Dr. Kaufman did not recall Adger "mentioning anything about slipping" during his interview in preparation for Dr. Kaufman's report, which instead relayed Adger's report of hitting his head. And both of Adger's experts provided *multiple* potential causes for his fall—slipping at the bottom of the pit or bumping his head—and could not rule out either of them.

In sum, and contrary to Adger's argument, the district court *did* consider all the evidence attached to his opposition and correctly determined any supposed causation evidence was speculative at best.

## D

As TA suggests, even if the district court did not consider the circumstantial evidence attached to Adger's opposition—though we find that it did—each piece of evidence cuts against Adger.

First, consider Abrone's deposition. Abrone speculated that the oil caused Adger to slip and fall. But, as emphasized above, it also includes Abrone's repeated admissions that he did not see or hear Adger fall, nor did he have any understanding of what happened or how Adger ended up on the ground.

Second, consider Adger's deposition. Adger testified that he did not feel dizzy or lightheaded before his collapse and believed that this observation "rul[ed] out any medical causes of his fall." But the lack of medical causes does not show what *did* cause his fall. And more importantly, Adger explicitly stated that he did not know what caused him to fall.

Third, consider TA's surveillance video. Adger relies on the video to show he "had no issues walking and did not slip during the 17 seconds it took to follow Abrone before entering the service pit." But that video doesn't help us determine how Adger fell because it doesn't contain any footage of the actual fall.

Fourth, consider photographs of the service pit showing oil and "kitty litter," or oil absorbent. But these photographs do not provide any reason to believe that Adger slipped on the oil, as opposed to falling on the stairs—as

originally alleged—or hitting his head. The photos merely evidence the presence of oil and kitty litter—not that either caused his fall.[2]

Fifth, consider deposition testimony of TA's site manager, Justin Foster. Adger relies on Foster's testimony that the oil and other fluids in the service pit posed a dangerous condition. But, unhelpfully to Adger, Foster *also* testified that he knew Adger did not slip on oil because the floor was dry, lightly coated in oil absorbent, and there were no scuff marks on the floor.

Sixth, consider Dr. Kaufman's medical opinion. Dr. Kaufman's initial expert report evaluated Adger's injuries, medications, and expected lifestyle changes. Dr. Kaufman also reported that "[t]he last that [Adger] remembers was walking down when he hit his head on an object," which undermines the supposed theory that Adger slipped on oil. Dr. Kaufman's initial report did not rule out any medical causes for Adger's collapse. Nor did he give an opinion about what *did* cause Adger to fall, until his amended report. And this later amended report conflicted with the earlier one, now suggesting Adger slipped.

Finally, consider Dr. Henry's liability opinion. Dr. Henry's initial report—the only opinion by Dr. Henry given to the district court prior to its grant of summary judgment to TA[3]—supported Adger's now-abandoned

---

[2] Moreover, contrary to Adger's assertions that the presence of the oil and "kitty litter" show dangerous conditions existed, the purpose of kitty litter is to *absorb* oil. So the fact that kitty litter was present suggests that any liquid oil was being absorbed—rather than creating slippery conditions.

[3] Adger seems to suggest that the deposition testimony of his experts, Dr. Kaufman and Dr. Henry, as well as Dr. Henry's supplemental report, provide additional circumstantial evidence sufficient to raise a genuine dispute of material fact. But these documents were not included with Adger's initial opposition, so we cannot consider them in our *de novo* review of summary judgment. *See Am. Family Life Assur. Co. of Columbus v. Biles*, 714 F.3d 887, 896 (5th Cir. 2013) (per curiam) (quoting *Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915 (5th Cir. 1992)) ("Although on summary judgment the record is

theory of dangerous stairs. As the district court recognized, Adger's "deposition testimony unveils that he did not fall while walking down the service pit stairs and that he did not use the handrails." Accordingly, Dr. Henry's stairs-or-handrail opinion is "irrelevant to the issue of causation" for his new theory of slipping on oil in the service pit.

Adger's evidence does not provide proof allowing "a rational, nonspeculative conclusion" that causation exists. *Transco Leasing Corp. v. United States*, 896 F.2d 1435, 1449 (5th Cir.), *amended on reh'g in part*, 905 F.2d 61 (5th Cir. 1990); *Ruiz*, 12 F.3d at 514. Because Adger failed to establish the cause-in-fact of his collapse, summary judgment was appropriate. *See, e.g.*, *Holladay*, 2024 WL 3688533; *Bailey*, 243 F. App'x 850; *Tomaso*, 174 So. 3d 679.

## IV

We now turn to Adger's alternative argument that the district court abused its discretion when it denied his Rule 59(e) motion for reconsideration. Not so. The evidence that Adger sought to introduce was not new.

When a district court denies a motion to reconsider, our standard of review depends on "whether the district court considered the materials attached to the [plaintiff's] motion, which were not previously provided to the court." *Templet v. HydroChem Inc.*, 367 F.3d 473, 477 (5th Cir. 2004) (citing *Ford Motor Credit Co. v. Bright*, 34 F.3d 322, 324 (5th Cir. 1994)). When a district court does not consider the attached materials, as is the case

---

reviewed de novo, this court . . . will not consider evidence or arguments that were not presented to the district court for its consideration in ruling on the motion.").

here,[4] we review for an abuse of discretion. *Id.* And "[u]nder this standard of review, the district court's decision and decision-making process need only be reasonable." *Id.* Indeed, "[c]ourts have broad discretion in deciding such motions." *Johnson v. Diversicare Afton Oaks, LLC*, 597 F.3d 673, 677 (5th Cir. 2010).

"Reconsideration of a judgment after its entry is an extraordinary remedy that should be used sparingly." *Templet*, 367 F.3d at 479. "Rule 59(e) serves the narrow purpose of allowing a party to correct manifest errors of law or fact or to present newly discovered evidence." *Id.* (cleaned up).

Adger requests reconsideration based on "the discovery of new or additional evidence." Reconsideration should be granted "*only* if (1) the facts discovered are of such a nature that they would probably change the outcome; (2) the facts alleged are actually newly discovered and could not have been discovered earlier by proper diligence; *and* (3) the facts are not merely cumulative or impeaching."[5] *Johnson*, 597 F.3d at 677 (emphases

---

[4] In a footnote, the district court noted that "even if [it] considered the evidence attached to" Adger's motion for reconsideration, it "would still have reached the same conclusion that the causation opinions are mere speculations and that [Adger] fails to meet his burden of proof." This alternative holding is not on appeal before us, given that Adger only appeals the district court's "refus[al] to review Adger's additional evidence" because he did not seek leave to supplement his opposition.

[5] Adger argues the district court should have considered the four "illustrative" factors outlined in *Luig v. North Bay Enterprises, Inc.*, 817 F.3d 901 (5th Cir. 2016). To the extent those factors are relevant, two factors overlap with our analysis here: The evidence attached to Adger's motion for reconsideration "was available . . . at the time of the summary [judgment] motion," and Adger's reason for failing to present the evidence before summary judgment was granted is unavailing. *Id.* at 906. The other two factors will not carry the day, either. In *Luig*, neither party briefed an issue which the district court decided *sua sponte*, and thus, the plaintiff never had an opportunity to present the evidence and argument relevant to that issue, resulting in unfair prejudice. *Id.* at 907. Such is not the case here. The deposition testimony of Dr. Henry and Dr. Kaufman, and Dr. Henry's supplemental report, provide two potential causes for Adger's collapse—and neither expert could rule out a cause—proving the evidence has no probative value that could

added) (internal quotation marks omitted) (quoting *Infusion Res., Inc. v. Minimed, Inc.*, 351 F.3d 688, 696–97 (5th Cir. 2003)).

Here, however, the supposedly "new" evidence was not "actually newly discovered" and "could [] have been discovered earlier by proper diligence." *Id.* Although Adger had only one week after deposing Abrone to submit his opposition to TA's motion for summary judgment—and blames TA for the late expert report and depositions of Dr. Henry and Dr. Kaufman—Adger had all the information prior to the district court's grant of summary judgment. Indeed, Adger deposed Dr. Henry on February 21, 2024, and Dr. Kaufman on March 8, and provided Dr. Henry's updated expert opinion on February 19. And the district court didn't grant summary judgment until April 24, 2024—more than a month and a half after the *latest* deposition.

As the district court found, Adger never sought court permission to supplement his opposition with this "new" evidence or to seek additional time, and the evidence existed prior to the summary-judgment ruling. Adger's only explanation as to *why* he didn't seek permission to offer the "new" evidence or for additional time is the district court's scheduling orders. But he never made such an excuse to the trial court.

Accordingly, Adger's reliance now on the district court's scheduling orders—without previously requesting additional time—is not an excuse. *See Mandawala v. Baptist Sch. of Health Pros.*, No. 23-50258, 2024 WL 1461943, at *5 (5th Cir. Apr. 4, 2024) (per curiam); *Anderson v. Martco, L.L.C.*, 852 F. App'x 858, 860 (5th Cir. 2021) (per curiam) (requiring that explanation for

---

change the summary-judgment outcome. *See supra* note 1. And no unfair prejudice results from Adger's own failure to present evidence—which he now argues is "probative . . . to defeat TA's motion for summary judgment"—available for almost two months prior to the district court's grant of summary judgment.

failure to provide evidence be presented to trial court). And "an unexcused failure to present evidence available at the time of summary judgment provides a valid basis for denying a subsequent motion for reconsideration." *Templet*, 367 F.3d at 479 (citing *Russ v. Int'l Paper Co.*, 943 F.2d 589, 593 (5th Cir. 1991)). Moreover, because Adger's "evidence is not new," "[i]t is clear then that [Adger's] motion for reconsideration did not seek to present new evidence but rather sought to rehash points and arguments already presented at summary judgment briefing." *Basinkeeper v. Bostick*, 663 F. App'x 291, 295 (5th Cir. 2016) (per curiam). And "rehash[ing] points and arguments" already made "is not enough to require a district court to exercise the 'extraordinary remedy' of reconsidering its order entering judgment." *Id.*

Because Adger's lack of "new" evidence without an excuse is dispositive, *see Templet*, 367 F.3d at 479; *Russ*, 943 F.2d at 593, the district court did not abuse its discretion when it denied Adger's motion for reconsideration.

V

Adger has failed to raise a genuine dispute of material fact regarding causation, so summary judgment in TA's favor is appropriate. And Adger does not justify his failure to provide existing evidence to the district court prior to its grant of summary judgment. Therefore, the district court did not abuse its discretion in denying Adger's motion for reconsideration. We AFFIRM.